First case this morning is ULTRAMERCIAL v. HULU. Mr. Hadley? Your Honor, may it please the Court. This Court's recent Research Corporation case held that patent claims are eligible for patenting if they satisfy two conditions. First, they must meet one of the enumerated categories set forth in Section 101 of the Patent Act. And second, they cannot claim a law of nature, a physical phenomenon, or an abstract idea. In this case, the 545 patent claims a process. That's undisputed. It is also undisputed that the claims do not purport to cover a law of nature or a physical phenomenon. That leaves one issue for appeal. Does the 545 patent purport to claim an abstract idea? How do you get past Bilski? Bilski is the holding that says that if the claims cover one of the enumerated categories and are not a law of nature, a physical phenomenon, or an abstract idea, it's patentable. We get past Bilski because the 545 patent does not claim an abstract idea. But how do you distinguish your process from the Bilski process? The Bilski process was essentially a mathematical formula. The Supreme Court has never told us exactly what an abstract idea is. It's only given us examples of abstract ideas. The two examples of abstract ideas that the Supreme Court has given us are mathematical formulas. And a mathematical formula is an abstract idea even if it's limited to a particular field of use. And even if after the solution is derived to the mathematical formula, limitations are added. That's what the Supreme Court refers to as post-solution. Don't we have to look at a claim and see if it simply describes mental steps? That is the other aspect. If a claim describes mental aspects, so the two things that I was getting at were mathematical formulas and then mental processes or mental steps, which can usually be expressed as a mathematical formula. In Bilski, Claim 4 of the patent actually was expressed as a mathematical formula. On the other hand, where the claims themselves recite concrete and tangible steps... Which are the concrete and tangible steps that are in Claim 1? The concrete and tangible steps that are in Claim 1 are steps that require implementation on a programmed web server. If a claim requires implementation, if a step requires implementation through a machine like a programmed web server, it cannot be abstract. But didn't Fluke say, the Supreme Court say, that just because you limit your invention to a particular technology doesn't mean that that renders it patentable? No, that's not what Fluke said. What Fluke said is that if you have a mathematical formula, once you derive the solution to that formula, so if the invention is a formula, once you derive the solution to that formula, you add steps like you put it on a computer or other post-solution activities. That's not patentable. However, the courts have been clear that if the application of an idea must be implemented in steps through some sort of concrete, tangible means, like a programmed computer, then that is by definition not an abstract idea. Is every process that utilizes the internet eligible for patent? It depends on how it's claimed. I think that if a claim just recites the internet, but the claim steps themselves do not require implementation on a programmed computer, or in this case, a programmed web server, then perhaps the claims would be abstract. But getting back to the answer to your question, Your Honor, which claims require implementation through a programmed computer, certainly the fourth step does of restricting public access to the media product. There's no way to restrict the abstract when read in light of the specification other than through a programmed web server. The seventh step of in response to receiving a request from the consumer, facilitating the display of a sponsored message to the consumer, as well as the eighth step and ninth step, and actually the fifth step as well, of preventing the consumer from accessing the content that's made available on the web server until a consumer views the sponsored message. In other words, the intellectual property protected material is gated by the sponsored message. But there's nothing in the patent that explains how that gating process works, is there? The specification does explain how it works. The specification explains that the facilitator has a web server, that the web server is programmed in a way that prevents the, that provides in response to a consumer's request a sponsored message and does not allow access to the content that the consumer wants until that sponsored message is viewed. Right, but it's a generic description of the fact of programming. It doesn't explain how the programming operates. I agree that the source code or the actual software algorithms are not disclosed in this specification, but there has never been a case from this court or any other court that requires the actual programming algorithms to satisfy Section 101. Instead, thousands and thousands of patents that describe software inventions are written just like this one where the algorithms essentially are shown in flow charts like you have in Figures 2, 3, and 4 of this patent. Another issue that really is at the heart of this case is that we don't know the extent to which a programmed computer would be construed as required in these claims because the district court dismissed this case on a motion to dismiss, a 12B6 motion, without ever construing the claims, without considering the entire intrinsic record or any extrinsic evidence that might properly be considered in the context of claim construction. What particular aspects of claim construction do you think the district court should have engaged in? I think there are at least six terms in Claim 1 that require construction and when construed would be construed to require implementation through a programmed web server, and those terms are selecting, restricting, facilitating, allowing access, presenting, and recording. In fact, no district court has ever dismissed until now a case under Section 101 of the Patent Act and invalidated an entire patent without first construing the claim terms. That's not true because we've had a couple in the last month where that has happened, where they've come up without claim construction. But do you propose that in this or in any other case that we should take the position that claim construction is a critical first step before applying 101? Absolutely, Your Honor, and I'm familiar with the cases that Your Honor mentioned and my understanding of those cases, and I may be wrong because I know there are a lot of very recent cases, but they were not decided on motions to dismiss, 12B6 motions. They were decided on summary judgment, for example, the CyberSource case. The court actually had the party's claim construction briefing when it decided the issue on summary judgment. But we've had a couple others where they haven't. And I stand corrected. But I think that it's very rare, and in fact, just a few weeks ago in the same court, the Central District of California, a case much like this was considered called Sparks Network v. Humor Rainbow. It's not published yet, but the case docket is 2-11CB01430. Document 40 was filed on August 7, 2011, and that case involved a method for online dating using an intermediary, which is almost the same thing as the facilitator that's described in this case. The defendant moved to dismiss under Section 101, but the parties disputed whether the intermediary required implementation through a programmed web server, exactly this dispute that we have in this case. The court denied the motion and held that it could not decide the issue of what was required for the intermediary until it engaged in claim construction. And we think that at the very least there needs to be consistent standards. If courts are going to say that we can't resolve these kinds of issues without claim construction to determine the extent to which a programmed computer or some other tangible, non-abstract means is required in order to implement these steps of the patent without claim construction, that should be the standard set by this court. And I agree with Your Honor that claim construction is an essential first step, especially where the parties dispute whether the claims require implementation through some sort of a machine, some sort of physical, tangible thing that by definition cannot be an abstract idea. And so you think construing those claims would lead the court to conclude that you have to use the web server and that there wouldn't be any other mechanism to practice these claims? Absolutely. I think that the only way to reasonably construe these claims in accordance with this court's decision in Phillips is for particularly the steps that I outlined and terms like facilitator. Mr. Hadley, we're talking about subject matter eligibility, subject matter. Why do we have to worry about specific claim terms? This is looking at the subject matter, whether the field that this is in is precluded. Well, under Dyer and some of the other cases, the focus is on the claim terms themselves. In fact, Dyer at page 188 to 189 discussed the fact that a Section 101 analysis has to focus on the claims. And in fact, the Dyer case said, quote, it is irrelevant that any individual step or limitation of such process would itself be unpatentable under Section 101. Similarly, this court has found in the recent Prometheus case, it has said that even one limitation that is not abstract or a law of nature or a physical phenomenon is sufficient to bring the whole claim within the scope of Section 101. So even though Your Honor is correct that this is a subject matter issue, that subject matter issue cannot be resolved without looking at the particular claims. And the only way this court has said that you can ever look at claims is by construing them. And so there is simply no way to know whether a claim itself is abstract and each of the limitations in a claim are abstract until the court construes those claims. It's the subject matter that's abstract and not the claim, right? Well, you know, that's a—one of the things that the district court did here was characterize the core of the invention in an abstract way and say, well, you know, it's really just using advertising as a currency for getting free content. But that's not the core of the claim. What this invention really teaches is using, through a programmed web server, a sponsored message to prevent access and require viewing of the sponsored message before an online consumer can get IP-protected content. Do you want to save your rebuttal time, Mr. Hadley? Just one point. The test that I'm advocating, that the claim steps themselves require a concrete and tangible result, is not the State Street test. That—I'm sorry, the steps themselves recite concrete and it must be implemented through a concrete and tangible means is not the State Street test. That test focused on the result of the steps. What I think this court should hold, and what the cases seem to say, is that if the steps themselves have to be implemented through some sort of machine, some sort of concrete and tangible thing, then they are patent eligible. I'll reserve the rest of my time. Thank you, Mr. Hadley. Mr. Gehr? Thank you, Chief Judge Rader. May it please the Court. Your Honors, I think there are three principles that follow from the Supreme Court's precedent in Bilski and the Benson, Fluke, Deere chronology, as well as this Court's decision in RCT that govern this case. The first is that basic economic concepts, like hedging, are abstract, non-patentable ideas. Bilski Court said that. The PTO recognized that financial transactions are basic abstract ideas, economic concepts, and that's at JA 463. The second principle is that taking an abstract idea and limiting it to one field of use or adding token post-solution activities does not make the abstract idea patentable. Bilski said that at page 3231 of the decision citing the Fluke case. And the third principle is that taking the abstract idea and using specific applications or improvements that limit it in a meaningful way can make it patentable. So all that's generality. We have to look at the claim, right? And it's a series of steps. We have to look at the series of steps, not see what the general idea is, but whether the steps consist only of mental abstract steps or specific concrete steps. First of all, we have an internet limitation in the claim. And your opponent says anything over the internet that utilizes a programmed computer should be patentable. And then he specifically points out steps 4, I think he said 5, 7, 8, 9. And all of these are specific activities which don't seem to be just abstract. Let me make two points in response to that, Judge Lurie. The first is that any abstract concept or economic idea can be broken down into steps. That was true in the Bilski patent. And the second point that I would make is… Is he saying that any series of steps that constitute economic transactions are not patent eligible? Subject to the two qualifications I just said. One, if we're talking about simply eliminating it to a field of use like the internet, no, that doesn't make it patentable. How do you distinguish between a field of use and a specific application? Well, I think you'd look at Bilski. I think you'd look at RCT. What's going on in RCT is fundamentally different than this case. You're talking about taking a concept, the blue noise mask, and using a specific application that resulted in a completely different and improved image. And this court concluded that was patentable. I think that's perfectly consistent with Deere. In this case, you're not talking about any specific application or improvement. You're taking one of the oldest and most basic economic concepts, a transaction, trading internet, advertising, viewing for access to content. No different than trading credit card. If it's that old, why don't you just bring a 103 or a 102 and dispose of this as patentable instead of dealing with the murky area of eligibility? Well, we could, Your Honor. But 101, because 101 exists. Does this court advise you that that's the preferred way to proceed? I think that's one of the ways to proceed, Your Honor. Hasn't the court said that's the preferred way to proceed? It said it's a preferred way. Bilski did not say that that's the only way to go, Your Honor. Section 101 may be difficult to apply in some circumstances, but it remains a statutory gateway to patentability. Does 101 have a limitation on kinds of processes that cannot be eligible for patent protection? Oh, sure, sure. Where in 101 is that limitation? It's in the construction of new and useful in process and as interpreted by the Supreme Court. New and useful, if you had brought a utility or a anticipatory violation, then, of course, those would come into play. But where is there anything that says a process on a computer with specific implementing steps is abstract? Your Honor, I can point you first to the Supreme Court's decision, which makes clear that Section 101 does not cover abstract ideas. An abstract idea is not a process within the meaning of 101. I think that's a starting point that we all have to accept. I'm asking you why is this abstract when it has specific implemented steps on a machine? Because, first of all, the claim refers to an Internet. My friend himself recognizes that an Internet is not a machine. How do you get on the Internet without a machine? You can use a general purpose computer. Any computer out of the box from Dell or the like has an Internet Explorer that's going to get you onto the Internet. So we're into machines already. That would be the machine or transformation test, right? No, Your Honor. I think what's required by that test is a particular machine, a program, a computer that is programmed in a specific way or specialized ways to enable you to practice the invention. This claim here doesn't require that. And if I program this computer to access the Internet and do some shopping, I have programmed it in a particularized manner to satisfy this claim, right? I think what you have is a general purpose computer. I don't think – I think – You know computers better than that. This computer is not the same as that computer because it has different programming. Well, I think, Your Honor, any computer – They are identical in terms of the make and the model of the machine. But Allopat told you that once you program a computer, it has different blips and blops, ons and offs. Circuits become wired differently. So this is a different machine from that one. I don't think you could have taken the patent in Bilski and said, We're going to change it. We're going to protect hedging in the energy market over the Internet. I don't think that that would have transformed it into a patentable concept under 101, just like I don't think you can take the transaction here and say – and over the Internet any more than using a credit card over the Internet and say that that's a patentable concept. But you have particularized steps here that are implemented on a machine to achieve a result which you haven't shown me isn't new or non-obvious. If you had, of course, we wouldn't be here. They've taken the basic concept of a transaction. They broke it down into steps. Here are the basic steps. Set up shop, which is to say go get some content. Find an advertiser. Engage in your transaction. Limit access to content. What is abstract about that? Well, I think the transaction, you start with the concept of a transaction. What is abstract about a transaction? You have to have two parties. You have to have content and material. You have to have agreements. You have to have implementing machines and technology. There's nothing abstract there at all. Well, I think we agree with the PTO that financial transactions are examples of abstract economic concepts. I mean, I think it's no less abstract than hedging. Is there an exception in 101 for economic ideas? Not by its terms, Your Honor, but I mean, I frankly think when you're talking about patenting transactions, think about the economic impact if you're talking about patenting transactions, credit card transactions. If you could patent this, you could patent a leveraged buyout, which involves a step including an email. So I think, I mean, the implications of that are potentially staggering. But the appellant says this isn't just a transaction. The appellant will argue that if you construed the claims and you look at the specification, you'd realize that this involves the entire process of allowing the material to be played and the interaction and the recording of the number of times in which the material is played. And that's all post-solution activity, a recording log, these other steps, classic examples of post-solution activity as in fluke and in other cases, Your Honor. How do you define post-solution activity? I mean, where is the solution? At what point do we get to the solution? I think you're talking about the basic transactions and then you're trying to add bells and whistles like an activity log. What was dear except you performed the Arrhenius equation on a computer and popped open the rubber curing mold at the proper moment. It was simply a mathematical algorithm on a computer that popped open a rubber curing machine. Quite clearly resulted in a specific improvement that was patentable like the process in RCT. And why isn't this doing about exactly the same thing? We are facilitating a quick way to access content on the Internet and bring together parties through a complex set of relationships involving advertising. Your Honor, this is trying to patent a transaction. They've broken up into several steps. I mean, you could substitute access to advertising with credit card number and have the same steps that they've specified here. But see, you're just characterizing it. You're saying, well, this is a transaction, so it's bad. And we've just gone through how it's a transaction that needs a machine. It needs content. It needs parties. It needs an Internet. It has electronic components. It has transformation of data. It has values and money flowing back and forth. Abstract? I don't think it is abstract, Your Honor. What is abstract about it? Tell me what's abstract about it. Well, I think Bilski says that basic economic concepts are abstract. Can you show me that in Bilski? Basic economic concepts are abstract. I need that quote. As I read the decision, Your Honor, it recognizes hedging. So you're interpreting Bilski, which had no machines involved. It had no transaction amongst parties. It spoke in general terms about hedging. And you're characterizing that as the same as this. I think a critical premise of that decision is that hedging is a basic economic concept and that limiting it to hedging in the energy market does not make it patentable. We've dealt with the distinctions between this claim and Bilski, the machines, the Internet, the various parties, the content. We've dealt with all of that. And you haven't told me why those additional elements don't overcome the abstractness. Your Honor, I agree that you've put your finger on the distinction. They've taken the claim here, like Bilski, and added over the Internet. And I think in the Bilski case, the court said that not many patents are going to flunk the machine or transformation test and nevertheless pass the abstract idea threshold. And I think our position is that simply referring to the Internet is not sufficient to meet the machine prong. It's not a particular machine. There's a whole debate about what the patent claims and what it doesn't claim, whether it's just an economic idea or whether there's more machine that's involved. Doesn't that just play right into the notion that maybe the trial court should have actually construed the claims and determined what the patent really does claim and what it covers? No, Your Honor, for this reason. Our position is that if you interpret the patent to cover the Internet and therefore to cover a computer to access the Internet, it's still unpatentable. I think if the result of Bilski is that you could take the patent in Bilski and say do it over the Internet and make that patentable, then I think you're talking about expanding 101 in a way that the Supreme Court would have never conceived. This court has before it right now several patents that fall into the same box, dealer track case, the cyber source case, the fuzzy sharp case, and all those patents could be described as basic concepts where they're trying to make it patentable by just saying do it over the Internet. And if the court holds that the do it over the Internet is enough to satisfy the machine or transformation test to make an abstract idea patentable, then I think it is greatly expanding the concept of 101. Your opponent has not argued that just doing it over the Internet is sufficient. Well, he's arguing doing it over the Internet and therefore you need a computer so that is sufficient. Well, as I said, any computer out of the box is going to allow you to get on the Internet in today's society. And so I think that that is a meaningless limit. And when you go back to the three principles I said, you're looking for specific improvements, specific applications that meaningful limit the concept itself. Well, he argues it has to be programmed so that the viewer couldn't possibly get into the protected material without first watching the advertisement. I mean, he does argue that there are very specific programming aspects that are necessary for this concept to work. And that's like saying my transaction is if you give me a dollar, I'll give you an apple, but I'm not going to give you the apple until you give me the dollar. I think that's inherent in the transaction and therefore a meaningless limit. And there's no, I mean, in theory, if the court wants to conceptualize a situation where you could take something and truly apply it to a specialized computer, a computer program in a specific way in order to allow you to do it, and that is a case that's much farther afield than the case here where the only thing that this claim could be interpreted to do is to say do it over the Internet. Well, since we're here on a motion to dismiss, should we construe the claim exactly as the appellant wants it construed and assume that because the district court did no construction that we should just accept the appellant's construction, accept the appellant's characterization, and then apply 101? I think this court could do what Judge Klausner did, which is, in essence, to assume that their claim refers to the Internet and therefore this general purpose computer. That doesn't get them over 101. But the one thing I would say about claim construction is that... When does a general purpose computer become a programmed computer? Well, I think when you're talking about a computer... Whenever it's put into use. I'm just, I'm struggling with your idea that any computer is the same as any other computer because they're just a general purpose machine. I think what you're talking about is a computer... You wouldn't argue that these are the same machine, would you? Well, I don't know what's on them, Your Honor. They're identical Toshiba machines. But they're identical Toshiba machines. I think our point is, Your Honor, what their patent needs at most is a computer with Internet Explorer or Safari, and you can get that out of the box. That's a general purpose computer. So does the nature of the software that comes out of the box change the 101 analysis? I think what changes it is the invention itself has to claim a specialized program, a specialized process that you need in order to practice that and just need a computer that gets in... So if they've got a specialized process, you're going to concede that it's not abstract. And yet how could you do these steps without a specialized process? What I mean by that, Your Honor, is the kind of specific improvement or specific application that the Deere case refers to. How could you select a sponsor message without a particularized program? Well, Your Honor, again, that gets back to the basic concept of transaction. How could you receive content media products without a specific? How could you offer a consumer access? How could you? Of course, I can keep going. And, again, I think that gets your distance. And every single one of those is going to require very specific programming, isn't it? No, I think what you're doing is describing the basic components of a transaction. If I could make just... Okay. Your time has expired. Can I make two more points, just two quick points? No. Thank you. Thank you, Your Honor. Mr. Hadley, you have a minute and 40 seconds. Your Honor, I'm not sure what patenting transaction means, but to the extent that was buzzwords for business methods, the Supreme Court in Bilski made absolutely clear that business methods are patentable. The other point that I have... I'm not sure what they made clear in Bilski, but... You might mean not necessarily unpatentable. That's right. That's exactly right. What they said is they're not necessarily unpatentable. I agree with that. And counsel did not say how a general purpose computer out of the box could perform about four or five of the steps, at least, of the claims of this patent. And I would only suggest that the amount of Internet piracy, illegal Internet piracy that is rampant on the Internet, proves that a general purpose computer out of the box cannot prevent access to IP-protected content. And what Ultimertial figured out was how to do that using a web server and has built a successful business around it. It got ripped off when it did it, and fortunately, it had the foresight to seek patent protection before it disclosed its invention to the likes of Wild Tangent. And I suggest that the Ultimertial invention is exactly the type of entrepreneurial idea that the patent laws were meant to protect. We'd encourage Your Honor to reverse the district court and send the case back. Do you draw a distinction between just generally saying you could get on the Internet? Because I think your opposing counsel is correct that it's pretty easy for anybody these days to get on the Internet. But is there a distinction between that and the need for a web browser? I'm not sure I understand Your Honor's question. I do think that the patent claims themselves, the recited steps, encompass far more than just getting on the Internet because the claims focus on a web server at a facilitator's website that serves as an intermediary for the transactions. I hope that answers Your Honor's question. But that's my question, is the mere fact of a web server, obviously that's the vehicle that gets you on to the Internet. Does somehow a web server, is that different than claiming the Internet? I think that if the claims themselves require implementation through a programmed web server that accesses the web server, and by programmed web server I mean a server that is programmed to perform specific recited functions that's at the core of the invention, then that is different than just getting on the Internet. Because a general purpose computer can just get on the Internet and access all sorts of content for free. That's Internet piracy. Okay, so I can plug a web server into here, but you're saying my web server has to have the program to allow me to watch this material. Yes. If there are no more questions, my time has expired. Thank you, Mr. Hadley.